FILED
07 AUG 20 PM 12:29
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDORADO STONE, LLC; ELDORADO STONE OPERATIONS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RENAISSANCE STONE, INC; ALFONSO ALVAREZ; JOSE GALVEZ MARTINEZ; JOSEPH SMITH; ROB HABER; and ORCO CONSTRUCTION SUPPLY,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 04cv2562 JM(CAB)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT AS A MATTER OF LAW; CONDITIONALLY DENYING MOTION FOR NEW TRIAL UPON DEFENDANTS' ACCEPTANCE OF REMITTITUR; SCHEDULING ORDER |

Defendants and Counterclaimants Renaissance Stone, Inc., Alfonso Alvarez, Joseph Smith, and Rob Hager move for judgment as a matter of law ("JMOL") or, alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 50(b). Plaintiffs Eldorado Stone, LLC, and Eldorado Stone Operations, LLC. (collectively "Eldorado") partially oppose the motions. For the reasons set forth below, the court grants a remittitur on compensatory damages to $ 2,488,750, grants a remittitur on punitive damages against Rob Hager to $25,000, and denies all other grounds raised by Defendants. The denial of the motion for new trial is conditioned on Eldorado

accepting the remittitur on compensatory and punitive damages. In the event Eldorado accepts the remittitur, a Notice of Acceptance of Remittitur must be filed within 20 days of entry of this order. In the event Eldorado does not accept the remittitur, the parties are instructed to appear for a status conference re: trial setting on September 28, 2007.

**Legal Standards**

A post-verdict JMOL motion is proper "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000) (quoting Fed.R.Civ.P. 50(a)). The standard for granting a renewed post-verdict JMOL is the same as the standard for granting a pre-submission JMOL under Rule 50(a). Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1283 (9th Cir. 2001). The court must draw all reasonable inferences in favor of the nonmoving party and should review all evidence in the record. Reeves, 530 U.S. at 150.

A JMOL should be granted only if the jury's verdict is "against the great weight of the evidence, or it is quite clear that the jury has reached a seriously deficient result." EEOC v. Pape Lift, Inc., 115 F.3d 676, 680 (9th Cir. 1997). A new trial is appropriate only if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." Silver Sage Parners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 99th Cir. 2001).

**Sufficiency of the Evidence: Excessive Verdict**

Renaissance argues that there is insufficient evidence to support the jury's compensatory award of $15 million, an argument accepted by Eldorado. Renaissance generally contends that the maximum amount of damages supported by the evidence is a maximum of $2,488,750. (Motion at p.5:1-3). This amount represents Eldorado having captured virtually all, or about 95%, of Renaissance's sales. Unless the amount of compensatory damages is reduced, Renaissance argues that it is entitled to a new

trial.

The court concludes, and Eldorado does not dispute, that the $15 million compensatory award is excessive and contrary to the great weight of evidence presented at trial. The court conditions the granting of Renaissance's motion for new trial on Eldorado accepting a remittitur in the amount of $2,488,750. This amount represents Eldorado capturing approximately 95% of Renaissance's sales, and accounts for a small amount of the lost sales going to Eldorado's competitors. See D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982) (proper amount of remittitur is the maximum amount sustainable by the evidence). Given Eldorado's unique architectural appearance, the jury could reasonably have concluded that virtually all of Renaissance's sales were lost to Eldorado. The evidentiary record as a whole fully supports this determination. Eldorado's evidence established that the primary consideration in buying manufactured stone is the look of the product, no other stone manufacturer besides Renaissance could replicate the Eldorado look because of its trade secret coloration and production processes, Renaissance specifically sought to capture the look and feel of Eldorado's stone, numerous commercial and residential projects were lost to Renaissance, and that Eldorado would have made the great majority of sales at issue as no other competitors' products had been able to capture the Eldorado look. (Lexis Test.). The evidentiary record fully supports compensatory damages in the amount of 95% of lost sales, or $2,488,750.

In sum, the court conditions the denial of the motion for new trial on Eldorado accepting a remittitur in compensatory damages to $2,488,750.

**Sufficiency of the Evidence: There Is No Evidence to Support Any Damage Scenario**

Renaissance contends that the evidence shows that Eldorado did not lose any sales and that its sales actually increased over the past two years. Renaissance also contends that Eldorado's expert, Cary Mack, testified as to three possible losses and that it was improper to permit the jury to pick one of the alternative damage models at random.

The court concludes that sufficient evidence supports the damage award. Eldorado presented the testimony of Mack who testified that Eldorado's lost profits would have totaled $2,620,213.92 if Eldorado had in fact captured 100% of Renaissance's sales, and earned its standard profit per unit sold. Mack also testified as to lost profits based on 95% of captured sales, $2488,750. With respect to the argument that Eldorado did not lose any sales because its sales actually increased over the past two years, Eldorado responds that sales would have increased even more if it were not for Renaissance's misappropriation and use of Eldorado's trade secrets to replicate Eldorado's products.

In sum, for the reasons identified by Eldorado, sufficient evidence supports the compensatory damage award, as set forth above.

**Motion to Strike Eldorado's Lost Profits Evidence**

Renaissance moves to strike all evidence supporting an award of compensatory damage award because, in exchange for withdrawal of a discovery request, Eldorado "agreed not to seek [lost profits]." (Motion at p.7:15). In May 2006 Renaissance propounded discovery requests on Eldorado, generally requesting the deposition of the individual most knowledgeable about Eldorado's lost profits. In response to these requests Eldorado responded that the lost profits discovery was "irrelevant to Eldorado's trade secret claim, given that Eldorado has elected to pursue defendants' profits (rather than Eldorado's lost profits) as a damages model for its trade secret." For legal authority, Renaissance cites Wong v. Regents of University of California, 410 F.3d 1052 (9th Cir. 2005) for the proposition that a party cannot withhold information and then present it at trial. In Wong, after discovery had closed, defendant moved for summary judgment and plaintiff sought to introduce the expert opinions of non-disclosed experts. The Ninth Circuit affirmed the district court's exercise of discretion to exclude the untimely disclosed expert reports noting that the court had inherent authority to control its docket and, absent a good reason to consider the evidence, the district court does not abuse its discretion.

The court concludes that the motion to strike based upon alleged discovery violations is not an appropriate ground to be raised on a motion for judgment as a matter of law. The court rejected the same argument when raised by Renaissance by means of a motion in limine. As noted by Eldorado, there appears to be no legal basis for Renaissance to seek a pre-trial Rule 37(b) discovery sanction after conclusion of the trial.

Even if the motion were proper, the court notes that Defendants cannot demonstrate any prejudice as they were on notice that Eldorado was seeking lost profits at least as early as January 9, 2007 when they received Cary Mack's expert report identifying Eldorado's lost profits. Further, defense expert Jeffrey Kinrich submitted a rebuttal report to Mack's damage analysis wherein he specifically addressed the lost profits analysis. The rebuttal report does not indicate that further discovery was required or that there was any surprise regarding Eldorado seeking lost profits or the need to conduct additional discovery. Kinrich also made his own estimates of lost profits. Further, Renaissance deposed Mack on February 26, 2007 and Mack was extensively questioned about the lost profits calculations. Moreover, Renaissance never moved to compel production of relevant evidence. Accordingly, Renaissance cannot establish undue prejudice or surprise.

The motion to strike evidence is denied.

**Excessive Punitive Damages Award**

Renaissance contends that the punitive damages award was excessive because most California courts have stated that punitive damages should not be allowed to exceed 10% of the defendant's net worth. <u>Storage Services v. Oosterbgaan</u>, 214 Cal.App.498 (1989), citing <u>Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.</u>, 155 Cal.App.3d 381, 393-96 (1984) (Survey of punitive damages as percentages of net worth in a sampling of 15 cases from 1950-1984 indicates that punitive damage awards are generally about 10% of the defendant's net worth). Here, the Court awarded punitive damages of $1 million against Renaissance, $100,000 against Alvarez, and

$50,000 against Hager. Defendants request that the punitive damages award against Alvarez be reduced to $50,000 and the award against Hager to $25,000.

As to Alvarez, who declared a net worth of about $500,000, Eldorado responds that the award is not excessive because Alvarez testified that he owned three real estate properties, failed to produce backup documents to support his financial net worth, and testified that he transferred large amounts of cash out of his bank account immediately prior to and after the jury's verdict. The court declines to reduce the amount of punitive damages against Alvarez because of his incomplete financial disclosures and egregious conduct in misappropriating Eldorado's trade secrets. At the time of trial Alvarez provided evasive answers to questions about his net worth and location of assets. He further testified that shortly before and after the jury returned the verdict he transferred significant assets in what appears to be an attempt to place assets outside the reach of creditors. In light of Alvarez's failure to provide complete and accurate discovery and answers to questions about his net worth, the court has little confidence that the $500,000 net worth represents the entirety of his assets. Accordingly, the court declines to reduce the punitive damages award against Alvarez.

As to Hager, who declared a net worth $250,000, Eldorado responds that he helped establish a "pirate company" and that the award is not unreasonable in light of the millions in damages caused to Eldorado. This argument misses the mark. The court notes that Hager is less culpable than Alvarez and that he provided accurate discovery and testimony concerning his net worth. Under these circumstances, the court concludes that a punitive damage award of 10% of his net worth is more consistent with <u>Storage Services</u> and California law. Accordingly, the court conditions the denial of the motion for new trial upon Eldorado accepting a remittitur to a total punitive damages award against Hager in the amount of $25,000.

In sum, the court denies the motion with respect to Alvarez, grants the motion with respect to Hager, remitting punitive damages to $25,000, and denies the motion with respect to Renaissance as its negative net worth moots the motion.

**Insufficient Evidence to Support a Finding of Trademark Infringement**

Renaissance contends that Eldorado's product, RUSTIC LEDGE, is generic and therefore cannot be trademarked, even though the jury found infringement. Renaissance also contends that ELdorado did not present evidence of secondary meaning as to the mark CLIFFSTONE and that Eldorado failed to present sufficient evidence of likelihood of confusion.

Eldorado responds that the jury made findings of wilfulness with respect to RUSTIC LEDGE when compared to Renaissance's "Rustic Stone." Further, Eldorado represents that it presented the testimony of Mike Lewis, Jamie Scholl and Joseph Smith to support its claim that the two names were confusingly similar and that the PTO necessarily found that the mark is not generic by issuing federal registration for RUSTIC LEDGE. With respect to the mark CLIFFSTONE, the evidence presented by Eldorado established that the mark was not named after any particular stone in nature and that customers associated the mark with Eldorado. This evidence gives rise to a permissible inference that CLIFFSTONE had achieved secondary meaning in the market place. Eldorado also presented evidence from which the jury could find the likelihood of confusion. Eldorado presented evidence that the offending marks were used in the same market, the companies market through the same channels of trade, and, through the testimony of Jamie Scholl and Mike Lewis, the marks are confusingly similar.

In sum, sufficient evidence supports the jury's finding of trademark Infringement.

**Insufficient Evidence of Actual Dilution**

Renaissance contends that Eldorado has failed to present any evidence of actual dilution as required by Moseley. The Lanham Act, section 1125(c), "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433 (2003). As there is no evidence of actual dilution, Renaissance concludes that it is entitled to JMOL.

Eldorado responds that Congress amended Section 1125(c), and passed the Trademark Dilution Revision Act of 2006 ("TDRA"). (Pub.L. No. 109-312 Stat. 1730 (2006); See H.R. Rep 109-23, at 6 (2005) (stating that "[t]he Mosely [sic] standard creates an undue burden for trademark holders who contest diluting uses and should be revised."). Under the TDRA, signed into law on October 6, 2006, a plaintiff need only show a "likelihood of dilution." Starbucks Corp. V. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007) (confirming that actual dilution under Moseley is no longer the standard and that likelihood of dilution is the standard).

Here, Eldorado presented sufficient evidence to show that Renaissance's conduct lessened the capacity of Eldorado's marks to identify and distinguish its products. Mr. Scholl testified that he observed Renaissance's products and product names and believed they were Eldorado's products. Mr. Scholl also testified that he believed the names "Rustic Ledge Stone and "Rustic Stone" were Eldorado's products when they were Renaissance's products. Such evidence supports the jury's finding of a likelihood of dilution.

In sum, sufficient evidence supports the jury's finding of dilution.

**Insufficient Evidence to Support the Interference with Prospective Economic Advantage Claim and Preemption of that Claim**

Renaissance contends that the jury was explicitly instructed that the wrongful conduct on the interference claim had to be separate and apart from the misappropriate of trade secrets, copyright, or trademark claims. As there is no evidence of such independent wrong, Renaissance concludes that it is entitled to JMOL on the interference with prospective economic advantage claim. Renaissance also argues that the intentional interference claim is preempted by the California Uniform Trade Secrets Act ("CUTSA") and the Federal Copyright Act as there is no evidence of an independent wrong. The court rejects this argument as Eldorado has presented sufficient evidence of independent wrongs.

Eldorado produced sufficient evidence of independent wrongs by showing Renaissance wrongfully (1) induced 20 of Eldorado's employees to work for it; (2)

solicited Eldorado's customers by using products bearing infringing names to Plaintiff's trademarks; (3) infringed Eldorado's trade dress to create market confusion; (4) misrepresented Renaissance's products as, for example, just the same as Eldorado's but 30% cheaper; (5) targeted Eldorado's customers to sell counterfeit goods, and (6) engaged in predatory practices including making arrangements to meet with potential customers immediately after Eldorado made its sales presentation and then deliberately undercut Eldorado on price while claiming that its products were equal to Eldorado's products. This evidence gives rise to an inference that Renaissance engaged in independent wrongs.

In sum, there is sufficient evidence to support the jury's determination of liability on the interference claims.

To summarize, the court conditionally denies the motion for new trial upon Eldorado accepting a remittitur on (1) the amount of compensatory damages to $2,488,750 and (2) the amount of punitive damages against Hager to $25,000. In all other respects, the court affirms the jury's verdict and the court's Statement of Decision re: Punitive Damages. Eldorado is instructed to file a notice either accepting or rejecting the remittitur within 20 days of entry of this order. Upon receipt of the notice accepting the remittitur the court will enter final judgment in this action. In the event Eldorado rejects the remittitur the parties are instructed to appear for a status conference re: trial setting on September 28, 2007 at 1:30p.m.

**IT IS SO ORDERED.**

DATED: 8/20, 2007

JEFFREY T. MILLER
United States District Judge

cc: All parties

- 9 -

04cv2562