# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDORADO STONE, LLC; ELDORADO STONE OPERATIONS, LLC,<br><br>  Plaintiffs,<br>vs.<br>RENAISSANCE STONE, INC; ALFONSO ALVAREZ; JOSE GALVEZ MARTINEZ; JOSEPH SMITH; ROB HAGER; and ORCO CONSTRUCTION SUPPLY,<br><br>  Defendants.<br>_____<br>AND RELATED COUNTERCLAIMS | CASE NO. 04cv2562 JM(CAB)<br><br>ORDER DENYING MOTION FOR LEAVE TO AMEND JUDGMENT |

Plaintiffs Eldorado Stone, LLC and Eldorado Stone Operations, LLC (collectively "Eldorado") move for leave to amend the judgment to add Michael Berguin, Scott Butler and FCI/Mission Oaks Funding (the "Proposed Judgment Debtors") as alter egos of judgment debtor Renaissance Stone, Inc. ("RSI"). Proposed Judgment Debtors oppose the motion. For the reasons set forth below, the motion to amend the judgment is denied.

**BACKGROUND**

On March 29, 2007 a jury returned a unanimous verdict in favor of Eldorado and against Defendants. Following a remittitur, on January 22, 2008 final amended judgment was entered in favor of Eldorado and against RSI in the amount of $10,948,755.58, including attorneys' fees and costs. In May 2007 RSI ceased doing business and Eldorado commenced collection efforts against RSI. By

the time RSI ceased doing business, it had depleted its bank accounts and whatever assets the company had were turned over to a secured creditor. (Bjurstrom Decl. ¶4). To locate assets, Eldorado conducted a debtor's examination of Michael Berguin and Scott Butler, board members of RSI. Eldorado seeks to pierce the corporate veil and hold shareholders Berguin, Butler, and FCI/Mission Oaks Funding liable for RSI's judgment.

RSI, a former manufacturer and retailer of decorative stone products, was incorporated on July 8, 2004. Former Eldorado employee Alfonso Alvarez served as RSI's secretary, treasurer, and executive vice-president while Defendant Joseph Smith served as RSI's president.

Proposed Judgment Debtors are shareholders in RSI who purchased shares in RSI following the review of an offering memo prepared by Miller Capital Corporation. (FCI Rocks Decl. ¶4). FCI Rocks, a Nevada limited liability company in which Butler owned shares, purchased 30,000 shares of common stock for the purchase price of $300,000. Butler does not personally own shares in RSI. FCI Rocks was the third smallest shareholder, owning 3.59% of the total outstanding shares in RSI. (FCI Rocks Decl. ¶11). In September 2004 Berguin made an initial investment in RSI of $1,000,000. (Berguin Decl. ¶¶2, 5). Berguin was never an officer nor employee of RSI, had no responsibility concerning corporate formalities, and relied on RSI management to attend to corporate duties. (Berguin Decl. ¶6; Smith Decl. ¶116). At the time of their investment in RSI, neither Berguin nor Butler were aware that Alvarez had misappropriated trade secrets from Eldorado. Further, at the time of his initial investment in RSI, Berguin reviewed a letter prepared by Alvarez stating that he did not misappropriate any of Eldorado's trade secrets or take any proprietary information with him when he left Eldorado in June 2004. (Berguin Decl. ¶5; Exh. 1).

The business plan, prepared by Miller Capital Corporation, estimated a minimum capital requirement of $1.5 million. Ultimately, RSI raised initial capital of about $1.5 million. (Smith Decl. ¶¶18, 20).

By the fall of 2004 Eldorado had commenced the present action. At that time Berguin and FCI Rocks believed that RSI had meritorious defenses. It was only after the Alvarez's deposition that Berguin learned that Alvarez may have misappropriated Eldorado's intellectual property. (Berguin Decl. ¶17; Butler Decl. ¶19)). Neither Berguin nor Butler selected counsel for RSI or the other

1    named Defendants. (Berguin Decl. ¶19; Butler Decl. ¶22).

2        In October 2005 Eldorado's counsel conducted a meeting with Mike Lewis of Eldorado, Butler, and Berguin. No attorney for RSI was present at the meeting. (Butler Decl. ¶30). In a follow-up e-mail to the meeting, counsel for Eldorado indicated that she had held up on naming any of the investors as defendants. (Butler Decl. ¶32; Exh. FF). Butler participated in two additional meetings with Eldorado. (Butler Decl. ¶¶34, 35).

    Berguin, the largest shareholder in RSI, did not select or control the attorneys who represented RSI. (Berguin Decl. ¶19). After RSI experienced difficulty in raising additional capital, Berguin personally guaranteed the attorney's fees of Quinn Emanuel, counsel for RSI. In November 2006 Quinn Emanuel released the guarantee in exchange for payment of $441,980 toward attorney's fees already incurred by RSI and an additional $100,000 to fund a new retainer agreement between Quinn Emanuel and the named Defendants. Id. at ¶19. Ultimately, Berguin invested $1,000,000 in the first round of financing, $60,000 in the second round, $590,271 in the third round and $1,141,000 in the fourth and final round of financing for a combined total of $2,791,271. Id. at 37.

    Plaintiffs now move pursuant to Cal. Civil Code §187 to amend the judgment to add Proposed Judgment Debtors as parties to this action under an alter ego theory. The motion is opposed.

## DISCUSSION

**The Motion to Amend the Judgment**

<u>California Code of Civil Procedure §187</u>

    California Code of Civil Procedure §187 is interpreted to grant courts "the authority to amend a judgment to add additional judgment debtors." <u>Katzir's Floor and Home Design, Inc. v. M-MLS.COM</u> 394 F.3d 1143, 1148 (9th Cir. 2004) (quoting <u>Issa v. Alzammar</u>, 44 Cal.Rptr.2d 617, 618 (1999)). Section 187 provides:

> When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code.

Cal. Civ. Pro. §187. Such an equitable procedure is "based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." NEC Electronics Inc. v. Hurt, 208 Cal.App.3d 772, 778 (1989). In order to bind new individual defendants under an alter ego theory, the "judgment can be made individually binding on a person associated with the corporation only if the individual to be charged, personally or through a representative, had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." Id. at 778-79 (quoting Rest.2d, Judgment, §59, p.102). "The purpose of the requirement that the party to be added to the judgment had to have controlled the litigation is to protect that party's due process rights." Katzir's Floor, 394 F.3d at 1149. "Due process guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." Id. at 1148.

NEC has evolved as a leading case in the articulation of the criteria for determining whether a proposed individual may be added as a judgment debtor by amendment to a judgment. In NEC, plaintiff prevailed in his contract action and obtained default judgment against a corporation. Hurt, the chief executive officer and sole shareholder of the defaulted corporation was easily found to be the alter ego of the corporation. The NEC court observed that in order for Hurt to be added as a judgment debtor through amendment of the judgment, he would have had to exercise "[c]ontrol of the litigation sufficient to overcome due process objections [through] a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation. (Citations omitted). Clearly, some active defense of the underlying claim is contemplated." NEC, 208 Cal.App.3d at 781. The NEC court went on to hold that despite Hurt's continuing efforts to settle the case, through his being "aware" of the litigation, these efforts did not constitute Hurt being "actively involved" in defending the action.

Eldorado fails to establish that Butler or FCI Rocks had sufficient control over the course of litigation such that they should be held accountable for RSI's debts. Butler was never personally a shareholder in RSI. Rather, FCI Rocks initially owned about 3% of RSI's common stock and later acquired a 20% stake in the company. (Dennis Decl. ¶¶19, 20). Further, neither Butler nor FCI Rocks were founders of RSI nor officers of RSI. Butler, however, was elected to the board of directors of

RSI on February 28, 2006. Butler and FCI Rocks did not employ the firm of Quinn Emanuel as counsel for RSI nor control the litigation at the time of trial. Eldorado never deposed Butler nor did Butler attend any depositions. While Butler did attend several conferences regarding the litigation, he believed, based on discussions with Smith, Alvarez, Hager, and their attorneys, that no misappropriation of trade secrets had occurred and that RSI had meritorious defenses. (Butler Decl.). Under these circumstances, Plaintiffs fail to show that Butler, who was never represented by counsel throughout the litigation, exercised sufficient control over the litigation such that his interests were virtually represented at the time of trial.

Eldorado also fails to establish that Berguin had sufficient control over the course of the litigation such that he should be held personally accountable for the corporation's debts. Berguin was not involved in the formation of RSI and was never an officer of the company, although Berguin did become a director of RSI in February 2006. Berguin represents that he "agreed to become a member of the board solely to be able to access confidential litigation information and negotiate a settlement with Eldorado, and never received any compensation for my service as a director." (Berguin Decl. ¶13). Eldorado's evidence shows that Berguin actively participated in the first ENE and at every court ordered settlement conference. (Lewis Decl. ¶¶4-9). He also attended the deposition of Alfonso Alvarez, the individual who misappropriated Eldorado's trade secrets, and the deposition of RSI's color expert. (Id. at ¶9-10). Eldorado contends that Berguin had knowledge of Alvarez' wrongdoing and had access to Eldorado's trade secrets including its color formulas, production formulas and mold sequencing techniques. (Lewis Decl. ¶¶9, 10). With respect to Eldorado's conclusory allegation that Berguin had knowledge of Alvarez's theft of trade secrets, there is no evidence suggesting that Berguin had any knowledge of Alvarez's wrongful conduct until, at the earliest, Alvarez's deposition. Moreover, there is no evidence that Berguin (or Butler) acted in concert with Alvarez, participated in covering up the theft of trade secrets, or in any other way assisted in Alvarez's wrongful conduct.

The record also reflects that Berguin attended many of the trial proceedings and paid significant litigation expenses on behalf of RSI and, at one point, stated that he was in the driver's seat on settlement talks. Based upon these activities, Eldorado concludes that Berguin "actively

1  monitor[ed] and control[led] the litigation for RSI.[1]" (Reply at p.8:15).  This argument misses the
2  mark.  The issue is not whether Berguin controlled the litigation for RSI, but whether  Berguin
3  conducted the litigation "with a diligence corresponding to the risk of personal liability that was
4  involved." NEC, 208 Cal.App.3d at 781.  Here,  Berguin did not select or control RSI's attorneys's
5  or its defense.  RSI's attorneys were selected by Joe Smith.  (Smith Decl. ¶34-36).  He also explains
6  that he communicated with Lewis to explore settlement because Lewis refused to communicate with
7  either Smith or Alvarez (Berguin SR Decl. ¶8).  Berguin also declares that he never commingled any
8  personal assets with those of RSI, he never received any salary or distribution from RSI, and was
9  never privy to all of the papers filed and evidence submitted in the underlying action. (Berguin Decl.
10 ¶44).  Based upon the evidentiary record submitted by the parties, there is insufficient evidence to
11 show that  Berguin had such extensive control over the litigation such that he, a non-party to the
12 litigation, conducted himself with the diligence corresponding to the risk of personal liability."
13 Katzir's Floor, 394 F.3d at 1150.

14      Other equitable considerations also weigh against Eldorado.  Eldorado fails to adequately
15 explain why it never timely joined Berguin and Butler as parties to this action.  See Alexander v.
16 Abvbey of the Chimes, 104 Cal.App.3d 39, 47-48 (1980). Eldorado asserted an alter ego theory in its
17 complaints and explains that it delayed seeking to join Berguin and Butler because of the delay in
18 conducting a debtor's examination of RSI.   Apparently, Eldorado considered naming Berguin and
19 Butler as parties as early as October 13, 2005, (Exh. FF), yet took no steps to do so.  One difficulty
20 with Eldorado's argument is that much of the evidence relied upon by Eldorado in making their
21 arguments was known prior to the trial or the debtor's examination in this case.  Moreover, Eldorado
22 makes no showing that it could not have timely pursued discovery on the alter ego issue.   The
23 evidence suggests that Eldorado has not diligently pursued its potential claims against  Berguin,
24 Butler, or FCI/Mission Oaks.

---

[1] The evidentiary record before the court compels the conclusion that Berguin clearly did not control the litigation for RSI.  There is no indication Berguin shaped the defense of the action or in any way influenced trial counsel, including named partner Eric Emanuel of Quin Emanuel Urquhart Oliver and Hedges, in the defense of the case.  Moreover, Berguin was never called as a witness on behalf of RSI nor was he called by El Dorado as an adverse witness.  Finally, there was no suggestion in the case presented by Eldorado that any part of its claims against RSI were predicated upon the actions of Berguin.

Finally, there is little doubt that the Proposed Judgment Creditors are prejudiced by Eldorado's post-trial efforts to amend the judgment. Rather than present its case to the trier of fact at the time of trial to resolve the substantial and disputed material issues of fact, Eldorado seeks to circumvent Proposed Judgment Creditors' due process rights to be heard by the trier of fact and to present evidence in support of their defenses. This is particularly true where the evidentiary record fails to establish that Proposed Judgment Creditors participated or controlled the litigation in a manner consistent "with a diligence corresponding to the risk of personal liability that was involved." NEC, 208 Cal. App.3d at 779.

In sum, the court denies the motion to amend because Eldorado fails to establish that Berguin, FCI Rocks or Butler exercised sufficient control over the underlying litigation such that imposition of liability comports with fundamental notions of due process.

Alter Ego

Even if the motion to amend the judgment were appropriate under California Code of Civil Procedure §187, Eldorado fails to establish alter ego liability. The legal standards for application of alter ego are well-established:

> The two principal questions to establish alter ego are whether there is 'such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist' and whether there would be 'an inequitable result if the acts in question are treated as those of the corporation alone.' [Citation.] The courts consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. [Citation.] No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine. [Citation.] Moreover, even if the unity of interest and ownership element is shown, alter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard.'

VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc. 99 Cal.App.4th 228, 244 (2002). The court considers the following factors.

**A. Undercapitalization**

A corporation organized without sufficient capital is "an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts. . . If the capital is illusory or trifling

compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." <u>Automotriz Del Golfo De California S.A. De C.V. v. Resnick</u>, 47 Cal.2d 792, 797 (1957). Eldorado represents that the business plan calls for initial capitalization of $3,000,000 but RSI only raised initial capital in the amount of about $1.5 million. (Mack Decl. Exh. F). Based largely upon this initial call for $3 million in initial capital, Eldorado's expert, Cary Mack, declares that the company was undercapitalized. (Mack Decl. ¶¶28-30).

The record, however, demonstrates that the amount of capital raised by RSI cannot fairly be characterized as "illusory or trifling." <u>id.</u> Berguin and Butler come forward with evidence to show that the amended offering memo he received called for an initial minimum capitalization of $1.5 million, and not $3 million. (Basney Decl. ¶18-30; Smith Decl. ¶¶15-23). RSI's sales in a two year period approached $3.9 million in sales and profits of about $2.3 million. (January 9, 2007 Report of Mack). The sales and anticipated profits demonstrate that RSI, in the beginning, was an adequately capitalized going-concern. Further, total capital invested in RSI ultimately exceeded $4.8 million, with over 25% of that spent on litigation expenses.

Proposed Judgment Debtors have established that RSI was well capitalized. The demise of RSI was set in place when Alvarez misappropriated Eldorado's trade secrets. From nearly the beginning, RSI was besieged by litigation costs which siphoned off capital and distracted RSI's management. Further, Eldorado successfully sought to have Orco, RSI's distributor, terminate its distribution agreement with RSI and contacted RSI's customers to inform them that RSI's products were based on trade secrets misappropriated from Eldorado. That RSI was ultimately unsuccessful is attributable to the misappropriation of trade secrets, not undercapitalization.

In sum, this most important factor overwhelming favors the Proposed Judgment Creditors as RSI was adequately capitalized.

### B. Corporate Formalities

Eldorado comes forward with evidence to show that RSI did not faithfully follow all corporate formalities. As an initial matter, the parties dispute whether California or Nevada law should apply as RSI is incorporated in Nevada. Eldorado cites several authorities where foreign corporations were subject to California law in determining whether certain shareholders were the alter ego of

1  corporations. Katzir's Floor, 394 F.3d 1143; Sonora Diamond Corp. v. Superior Court, 83
2  Cal.App.4th 523 (2000). While neither party engages in a detailed choice of law analysis, the court
3  notes that there do not appear to be significant differences in the states' respective corporate
4  governance statutes. Eldorado cites several instances where RSI failed to comply with corporate
5  formalities: (1) the books and records of RSI after January 12, 2005 do not reflect the issuance of any
6  further RSI stock certificates; (2) the total amount of shares were not authorized by the board of
7  directors; (3) there is no authorization for the 25 to 1 conversion ratio of common stock to preferred
8  stock; (4) there are no minute notes for some of the directors' meetings; (5) RSI failed to hold annual
9  shareholder meetings, and (6) RSI never held officer elections or directors elections.

10  Proposed Judgment Debtors concede that RSI did not strictly comply with all corporate
11  formalities and characterize the failings as relatively minor. Such failings warrant piercing the
12  corporate veil only when "the financial setup of the corporation is []a sham and caused an injustice."
13  North Arlington Medical Bldg., 86 Nev.575 (1970). While the court notes that RSI did not comply
14  with all corporate formalities, the court finds that Berguin and Butler were shareholders of RSI who
15  do not have the responsibility to comply with corporate formalities.

16  In sum, the failure to faithfully comply with all corporate formalities favors Eldorado.

17  **C. Injustice**

18  Eldorado argues that the failure to pierce the corporate veil will result in a grave injustice to
19  Eldorado. "It would be extremely unfair to Eldorado to allow these shareholders to hide behind a
20  corporate shield and walk away from the substantial damages caused by their pre-meditated, wholesale
21  misappropriation of Eldorado's intellectual property." (Motion at p.18:20-22). This argument misses
22  the mark. Eldorado simply fails to submit any evidence that Berguin, Butler, or FCI/Mission Oaks
23  had any involvement in Alvarez's misappropriation of trade secrets. The alter ego doctrine is applied
24  to avoid inequitable results, not to impose financial hardship and prejudice on innocent shareholders.
25  See United States Fire Ins. Co. v. National Union Fire Ins. Co., 107 Cal.App.3d 456, 469 (1980). The
26  court concludes that this factor favors the Proposed Judgment Creditors.

27  In sum, the court concludes that Eldorado fails to establish that an amendment to the judgment
28  is warranted under the circumstances. Amendment of the judgment is not appropriate under California

Code of Civil Procedure §187 as Proposed Judgment Creditors did not exercise sufficient control over the litigation such that the imposition of liability comports with notions of due process. Amendment of the judgment is also not appropriate because Eldorado fails to establish that the Proposed Judgment Creditors are the alter egos of RSI. The motion to amend the judgment is denied. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: February 5, 2009

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties